# HUDSON *v.* PARKER.

ORIGINAL.

No. 9. Original. Submitted January 7, 1895. — Decided February 4, 1895.

A writ of error, under the act of March 3, 1891, c. 517, § 5, from this court to a Circuit or District Court of the United States, in a case of conviction of an infamous and not capital crime, may be allowed, the citation signed, and a supersedeas granted, by any justice of this court, although not assigned to the particular circuit; and the same justice may order the prisoner, after citation served, to be admitted to bail, by the judge before whom the conviction was had, upon giving bond in a certain sum, in proper form and with sufficient sureties; and if that judge declines so to admit to bail, because in his opinion the order was without authority of law, and the bond if given would be void, he may be compelled to do so by this court by writ of mandamus.

THIS was a petition for a writ of mandamus to the Honorable Isaac C. Parker, the District Judge of the United States for the Western District of Arkansas, to command him to admit the petitioner to bail on a writ of error from this court, dated August 14, 1894, upon a judgment rendered by the District Court for that district at May term, 1894, to wit, on July 21, 1894, adjudging him, upon conviction by a jury, to be guilty of an assault with intent to kill, and sentencing him to imprisonment for the term of four years at hard labor at Brooklyn in the State of New York.

The petition alleged that Mr. Justice Brewer, the justice of this court assigned to the eighth circuit, in which the District Court was held, being absent from that circuit and from the city of Washington, the petitioner, on August 14, 1894, presented to Mr. Justice White, at chambers in this city, a petition for a writ of error upon that judgment, and for a supersedeas and bail pending the writ of error; and that Mr. Justice White signed and endorsed upon that petition the following order:

"Writ of error, to operate as a supersedeas, allowed, returnable according to law, the defendant to furnish bond in the sum of five thousand dollars, conditioned according to law, subject to the approval of the District Judge.

"E. D. WHITE,
"Justice Supreme Court of the United States.

"Washington, August 14, 1894."

The petition for a mandamus further alleged that on September 3, 1894, after the writ of error had been issued, and the citation served upon the United States, the petitioner presented to the District Judge in open court, and requested him to approve, a bond in the sum of $5000, executed by himself, as principal, and by four persons, residents of the Western District of Arkansas, as sureties, who (as appeared by their affidavits annexed to the bond) were worth in their own right, over and above their debts and liabilities and the property exempt by law from execution, the sum of $17,500.

This bond, which was filed with the petition for a mandamus, was dated August 27, 1894; recited that the petitioner had sued out a writ of error from this court, upon which a citation had been issued and served upon the United States, and that the petitioner had, by order of Mr. Justice White, been admitted to bail, pending the writ of error, in the sum of $5000; and was conditioned that the petitioner should prosecute his writ of error with effect and without delay, and should abide the judgment of this court, and, if this court should reverse the judgment of the District Court, appear in that court until discharged according to law.

The petition for a mandamus further alleged that, upon the presentation of this bond to the District Judge, he refused to approve it, or to discharge the petitioner, and made and signed an order, which, after reciting the application to him for the approval of the bond, and the order of Mr. Justice White, proceeded and concluded as follows:

"It is found by the judge of this court, that the above order is made without authority of law, and is therefore invalid, and that the bond approved by him in obedience to

it would be null and void, and that there would be no obligation of the sureties to have the principal in court when and where he is required by the terms of the bond to appear, nor would there be any obligation resting on the principal to appear as required by the terms of the bond.

"For the above reasons, the judge of this court refuses to approve the bond tendered by defendant; and further, it is noted that defendant has made no legal tender of bail.

"I. C. PARKER,
"United States District Judge."

The petition for a writ of mandamus also alleged that the writ of error had been duly entered and was pending in this court, and the petitioner was still confined in prison at Fort Smith in the State of Arkansas; and prayed that the order of Mr. Justice White might be affirmed by this court, and the District Judge be ordered to approve the bond and discharge the petitioner, or that his bond might be approved by this court and the petitioner discharged, and for all other proper relief.

This court gave leave to file the petition, and granted a rule to show cause why a peremptory mandamus should not issue as prayed for.

The District Judge, in his return to the rule, stated that, on August 6, 1894, (as appeared by the record,) he ordered that, upon the filing of an assignment of errors, the clerk issue a writ of error taking the case to this court; but that, at the request of the petitioner's counsel, stating that they had not determined whether they would take the case to this court, the writ of error was not immediately issued by the clerk; and that the application to Mr. Justice White for a writ of error, and for supersedeas and bail, was made before the writ of error was issued; that, when Mr. Justice White's order was made, there had been no citation served, but (as the record showed) the citation, signed by him on August 15, 1894, was not served until August 21, 1894; and that, after Mr. Justice White's order, "the petitioner, with others, was tried and convicted of conspiracy to run away the principal witness against him in the above entitled cause; that one of

the conspirators gave evidence against him, and that he is now in jail at Fort Smith, Arkansas, on that charge."

The return also set forth at length various reasons of law why a writ of mandamus should not issue, which may be briefly stated as follows:

. First. That the petitioner had a clear, adequate, and complete remedy, by applying to Mr. Justice Brewer, the justice assigned to the eighth circuit, for the approval of the bond.

Second. That under paragraph 2 of Rule 36 of this court, the matter of admitting to bail and approving the bond was a matter requiring the exercise of judicial power and discretion, involving the decision of questions of law and the ascertainment of facts, and could not be controlled by writ of mandamus.

Third. That the bond, if given, would be void, because by paragraph 2 of Rule 36 a person convicted and sentenced for crime could only be admitted to bail after citation served.

Fourth. That the bond would be void, because, by paragraph 2 of Rule 36, Mr. Justice White, not being the justice of this court assigned to the eighth circuit, (according to the last allotment, made April 2, 1894, 152 U. S. 711,) nor a judge of the Circuit Court of that circuit, nor the district judge of any district in that circuit, had no authority to make the order.

Fifth. That paragraph 2 of Rule 36 was void, for want of power in this court, either by the common law, or under any act of Congress, to order bail to be taken after conviction and sentence of such a crime as that of which the petitioner had been convicted.

The District Judge, in concluding his return, submitted the questions involved to the judgment of this court; stated that he would, as a matter of course, enforce by order any decision given by this court in the premises; and prayed to be dismissed without day.

The petitioner demurred to the return.

*Mr. William M. Cravens* and *Mr. A. H. Garland* for the petitioner, submitted on their brief.

*Mr. Solicitor General* and *Judge Isaac C. Parker* in person, opposing, submitted on their briefs.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By express acts of Congress, beginning with the first organization of the judicial system of the United States, this court and the Circuit and District Courts are empowered to issue all writs, not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. Act of September 24, 1789, c. 20, § 14; 1 Stat. 81, 82; Rev. Stat. § 716; *Stockton* v. *Bishop,* 2 How. 74; *Hardeman* v. *Anderson,* 4 How. 640; *Ex parte Milwaukee Railroad,* 5 Wall. 188. Under the first judiciary act, this court had power " to make and establish all necessary rules for the orderly conducting of business " in all the courts of the United States. Act of September 24, 1789, c. 20, § 17; 1 Stat. 83. And successive statutes recognized its power to make rules, not inconsistent with the laws of the United States, prescribing the forms of writs and other process, at common law, as well as in equity or admiralty, in those courts. Acts of May 8, 1792, c. 36, § 2 ; 1 Stat. 276; May 19, 1828, c. 68, §§ 1, 3; 4 Stat. 281; August 23, 1842, c. 188, § 6; 5 Stat. 518; *Wayman* v. *Southard,* 10 Wheat. 1, 27–29; *Bank of United States* v. *Halstead,* 10 Wheat. 51; *Beers* v. *Haughton,* 9 Pet. 329, 360; *Ward* v. *Chamberlain,* 2 Black, 430, 436. Since the act of June 1, 1872, c. 255, § 5, indeed, the practice, pleadings, and forms and modes of proceeding, in actions at law in the Circuit and District Courts of the United States, are required to conform, as near as may be, to those existing at the time in like causes in the courts of record of the State within which they are held, any rule of court to the contrary notwithstanding. 17 Stat. 197; Rev. Stat. § 914. But this act does not include the manner of bringing cases from a lower court of the United States to this court. *Chateaugay Co., petitioner,* 128 U. S. 544; *Fishburn* v. *Chicago &c. Railway,*

137 U. S. 60. Under section 917 of the Revised Statutes, therefore, by which (reënacting to this extent the provision of the act of 1842) "the Supreme Court shall have power to prescribe, from time to time, and in any manner not inconsistent with any law of the United States, the forms of writs and other process," this court has power to regulate the manner of proceeding, or "mode of process," in taking bail, upon writs of error from this court to the Circuit Court or District Court, in civil or criminal cases. Act of September 24, 1789, c. 20, § 33; 1 Stat. 91; Rev. Stat. § 1014; *Beers* v. *Haughton*, above cited; *United States* v. *Knight*, 14 Pet. 301; *United States* v. *Rundlett*, 2 Curtis, 41.

By section 4 of the act of March 3, 1891, c. 517, the review, by appeal, writ of error, or otherwise, of judgments of the Circuit Courts or District Courts, can be had. only in this court, or in the Circuit Courts of Appeals, according to the provisions of this act. By section 5, "appeals or writs of error may be taken from" the Circuit Courts or District Courts "direct to" this court "in cases of conviction of a capital or otherwise infamous crime," as well as in certain other classes of cases. 26 Stat. 827. And by section 11, "all provisions of law, now in force, regulating the methods and system of review, through appeals or writs of error, shall regulate the methods and system of appeals and writs of error provided for in this act in respect of the Circuit Courts of Appeals, including all provisions for bonds or other securities to be required and taken on such appeals and writs of error." 26 Stat. 829. But as to the methods and system of review, through appeals or writs of error, including the citations, supersedeas, and bond or other security, in cases, either civil or criminal, brought to this court from the Circuit Court or the District Court, Congress made no provision in this act, evidently considering those matters to be covered and regulated by the provisions of earlier statutes forming parts of one system.

By those statutes, upon writs of error from this court to the Circuit Courts or District Courts of the United States, as well as upon writs of error from this court to the courts of

the several States, any justice of this court — not necessarily the justice assigned to the circuit in which the other court is held — may, in or out of court, allow the writ of error, sign the citation, take the requisite security for the prosecution of the writ of error, and grant a supersedeas when the writ of error does not of itself operate as a stay of proceedings, as it does if filed and security given within sixty days after the judgment complained of. Rev. Stat. §§ 999, 1000, 1002, 1003, 1007; *Sage* v. *Railroad Co.*, 96 U. S. 712; *Hudgins* v. *Kemp*, 18 How. 530; *Peugh* v. *Davis*, 110 U. S. 227.

In *Claasen's case*, 140 U. S. 200, it was adjudged, upon full consideration, that by the act of 1891 a writ of error from this court to the Circuit Court, in the case of a conviction of a crime infamous but not capital, was a matter of right, without giving any security; that the citation might be signed by a justice of this court, under Rev. Stat. § 999; that a supersedeas might be granted, not only by this court, under § 716, but by a justice thereof, under § 1000; and that, if the justice signing the citation directed that it should operate as a supersedeas, the supersedeas might be obtained by merely serving the writ within the time prescribed in § 1007. Mr. Justice Blatchford, in delivering the unanimous judgment of the court accordingly, said: "To remove all doubt on the subject, however, in future cases, we have adopted a general rule, which is promulgated as Rule 36 of this court, and which embraces, also, the power to admit the defendant to bail after the citation is served." 140 U. S. 205, 207, 208.

By that rule, which was promulgated May 11, 1891, the same day on which that judgment was delivered, "An appeal or a writ of error from a circuit court or a district court direct to this court," in the cases provided for in sections 5 and 6 of the act of 1891, "may be allowed, in term time or in vacation, by any justice of this court, or by any circuit judge within his circuit, or by any district judge within his district, and the proper security be taken and the citation signed by him, and he may also grant a supersedeas and stay of execution or of proceedings, pending such writ of error or appeal." And by paragraph 2 of the same rule, "Where such writ

of error is allowed in the case of a conviction of an infamous crime, or in any other criminal case in which it will lie under said sections 5 and 6, the Circuit Court, or District Court, or any justice or judge thereof, shall have power, after the citation is served, to admit the accused to bail in such amount as may be fixed." 139 U. S. 706.

This court cannot, indeed, by rule, enlarge or restrict its own inherent jurisdiction and powers, or those of the other courts of the United States, or of a justice or judge of either, under the Constitution and laws of the United States. *Poultney* v. *La Fayette*, 12 Pet. 472; *The St. Lawrence*, 1 Black, 522, 526; *The Lottawanna*, 21 Wall. 558, 576, 579. Nor has it assumed to do so.

On the contrary, the rule in question was adopted by this court under and pursuant to its power to make rules, prescribing the forms of writs and process, and regulating the practice upon appeals or writs of error; and was so framed as to give effect to the appellate jurisdiction conferred by the act of 1891, in the manner most consistent with the provisions of the various acts of Congress concerning the same matter.

There can be no doubt, therefore, that under the acts of Congress, the decision of this court in *Claasen's case*, above cited, and the first paragraph of Rule 36, Mr. Justice White, although not the justice of this court assigned to the eighth circuit, was authorized to allow the writ of error, to operate as a supersedeas, and to sign the citation.

The next question is of the validity of his order, so far as regards admitting the prisoner to bail pending the writ of error.

Recurring once more to Rule 36, and to the decision in *Claasen's case*, which were considered and promulgated together, and mutually serve to explain each other, the matter stands thus: The first paragraph of the rule, embracing all cases, civil or criminal, of which this court has appellate jurisdiction under the act of 1891, provides that the writ of error may be allowed, in term time or vacation, "and the proper security be taken," the citation signed, and a supersedeas granted, "by any justice of this court." In *Claasen's case*, it was held that, in the case of an infamous crime, the writ of

error was a matter of right, and that no security, such as is necessary in a civil case, was required. The only "proper security," then, in a criminal case, is security for the appearance of a prisoner admitted to bail. Within the very terms of the rule, therefore, any justice of this court, although not assigned to the particular circuit, would seem to have the power to permit bail to be taken. But the power rests upon broader grounds.

The statutes of the United States have been framed upon the theory that a person accused of crime shall not, until he has been finally adjudged guilty in the court of last resort, be absolutely compelled to undergo imprisonment or punishment, but may be admitted to bail, not only after arrest and before trial, but after conviction and pending a writ of error.

The statutes as to bail upon arrest and before trial provide that "bail may be admitted" upon all arrests in capital cases, and "shall be admitted" upon all arrests in other criminal cases; and may be taken in capital cases by this court, or by a justice thereof, or by a circuit court, a circuit judge or a district judge, and in other criminal cases by any justice or judge of the United States or other magistrate named. Rev. Stat. §§ 1014–1016.

Under the act of March 3, 1879, c. 176, upon writs of error from the Circuit Court to review judgments of the District Court upon convictions in criminal cases, the justice of this court assigned to the circuit, or the circuit judge — that is to say, any member of the appellate court, except the district judge, presumably the judge who rendered the judgment below — might allow the writ, to operate as a supersedeas, and might take bail for the defendant's appearance in the Circuit Court. 20 Stat. 354; *United States* v. *Whittier*, 11 Bissell, 356. And upon a writ of error from this court to the highest court of a State to review a decision against a right claimed under the Constitution and laws of the United States, and which lies both in criminal and in civil cases, and operates as a supersedeas under the same circumstances in the one as in the other, bail may be taken pending the writ of error; but, because of the relation between the two governments, in

the court of the State only, it being enacted by the act of July 13, 1866, c. 184, § 69, in accordance with the practice previously prevailing in some States, that the plaintiff in error, if charged with an offence bailable by the laws of the State, shall not be released from custody until final judgment upon the writ of error, " or until a bond, with sufficient sureties, in a reasonable sum, as ordered and approved by the state court, shall be given;" or, if the offence is not so bailable, until such final judgment. 14 Stat. 172; Rev. Stat. § 1017; *Cohens* v. *Virginia,* 6 Wheat. 264; *Worcester* v. *Georgia,* 6 Pet. 515, 537, 562, 567; *Bryan* v. *Bates,* 12 Allen, 201. By these statutes, bail after conviction was provided for in every class of writs of error pending in the courts of the United States in cases of bailable offences; for, when they were enacted, no writ of error lay from this court to the Circuit Court or District Court in any criminal case.

By the act of February 6, 1889, c. 113, § 6, it was enacted that final judgments of any court of the United States upon conviction of a crime punishable with death might, upon the application of the defendant, be reviewed by this court " upon a writ of error, under such rules and regulations as said court may prescribe;" and that every such writ of error should " be allowed as of right, and without the requirement of any security for the prosecution of the same, or for costs;" and should " during its pendency operate as a stay of proceedings upon the judgment, in respect of which it is sued out," and might be immediately filed in this court; but should not be sued out or granted, except upon a petition filed, with the clerk of the court in which the trial was had, during the same term, or within sixty days after its expiration. 25 Stat. 656.

Although that act expressly recognized the power of this court to make rules regulating the proceedings upon writs of error in capital cases, yet, as by its terms the writ was to be allowed as of right, without requiring any security, and was of itself to operate as a stay of proceedings, no rule upon the subject was considered necessary, and none was made by this court. It can hardly be doubted, however, that Congress intended that the allowance of the writ of error and stay of

proceedings, while suspending the execution of the sentence, should neither have the effect of discharging the prisoner from custody, nor of preventing his being admitted to bail, upon sufficient cause shown, pending the writ of error; and, no special provision upon the subject of bail in a capital case after conviction having been made by act of Congress or rule of court, it would seem that it might be taken by the justice or judge who allowed the writ of error.

But, however it may be in a capital case, it is quite clear, in view of all the legislation on the subject of bail, that Congress must have intended that under the act of 1891, in cases of crimes not capital, and therefore bailable of right before con-·viction, bail might be taken, upon writ of error, by order of the proper court, justice or judge. And we are of opinion that any justice of this court, having power, by the acts of Congress, to allow the writ of error, to issue the citation, to take the security required by law, and to grant a supersedeas, has the authority, as incidental to the exercise of this power, to order the plaintiff in error to be admitted to bail, independently of any rule of court upon the subject; and that this authority is recognized in the first paragraph of Rule 36.

Having the authority to order bail to be taken, the same justice might either himself approve the bail bond; or he might order that such a bond should be taken in an amount fixed by him, the form of the bond and the sufficiency of the sureties to be passed upon by the court whose judgment was to be reviewed, or by a judge of that court; or he might leave the whole matter of bail to be dealt with by such court or judge.

Upon a writ of error in a civil case, the requisite security is ordinarily taken by the justice or judge who allows the writ and signs the citation. *Jerome* v. *McCarter*, 21 Wall. 17. But where the bond taken is insufficient in law, this court, in the exercise of its inherent jurisdiction as a court of error, may direct that the writ be dismissed, unless the plaintiff in error gives security sufficient in this respect, to be taken and approved by any justice or judge who is authorized to allow the writ of error and citation. *Catlett* v. *Brodie*, 9 Wheat. 553, 555; *O'Reilly* v. *Edrington*, 96 U. S. 724.

This court, in the lawful exercise of its power to prescribe the forms of process and to regulate the practice upon writs of error, has said, in paragraph 2 of Rule 36, that, in the case of a conviction of an infamous crime, " the Circuit Court, or District Court, or any justice or judge thereof, shall have power, after the citation is served, to admit the accused to bail in such amount as may be fixed."

The necessary consequence is that that part of the order of Mr. Justice White, which required " the defendant to furnish bond in the sum of five thousand dollars, conditioned according to law, subject to approval by the District Judge," was a valid exercise of his authority to order bail, in an amount fixed by him, to be taken by the District Judge, leaving the form of the bond, and the sufficiency of the sureties, to be passed upon by the latter.

A writ of error, allowed out of court, is neither considered as brought, even for the purpose of computing the time of limitation of suing it out, nor does it operate as a supersedeas, until it has been filed in the clerk's office of the court to which it is addressed. *Credit Co.* v. *Arkansas Railway*, 128 U. S. 258, 260, and cases cited; *Foster* v. *Kansas*, 112 U. S. 201. By the order of Mr. Justice White, the allowance of the writ of error, to operate as a supersedeas, was not to take effect until the approval of the bond by the District Judge; and when the bond was presented to the District Judge for approval, the writ of error had been filed in the clerk's office of the District Court, and the citation had been issued and served. The objection that the petitioner could only be admitted to bail after citation served has therefore no application to this case.

The discretion of a judge, indeed, in a matter entrusted by law to his judicial determination, cannot be controlled by writ of mandamus. But if he declines to exercise his discretion, or to act at all, when it is his duty to do so, a writ of mandamus may be issued to compel him to act. For instance, a writ of mandamus will lie to compel a judge to settle and sign a bill of exceptions, although not to control his discretion as to the frame of the bill. *Ex parte Bradstreet*, 4 Pet. 102; *Ex parte*

*Crane*, 5 Pet. 190; *Chateaugay Co., petitioner,* 128 U. S. 544, 557. See also *Ex parte Morgan,* 114 U. S. 174; *Ex parte Parker,* 120 U. S. 737; *Parker, petitioner,* 131 U. S. 221; *Virginia* v. *Paul,* 148 U. S. 107, 123, 124.

If, as suggested in the return, the petitioner is also in custody under a subsequent conviction for another offence, that custody will not be affected by admitting him to bail in this case.

Were the question here only as to what persons should be accepted as sureties on the bond, or as to their sufficiency, there would be no ground for issuing a writ of mandamus. *Ex parte Taylor,* 14 How. 3; *Ex parte Milwaukee Railroad,* 5 Wall. 188. But in the case before us, the District Judge has not exercised any discretion in the matter, but has declined to act at all, and has refused to approve the bond, solely because, in his own words, "it is found by" him that the order of Mr. Justice White was made without authority of law, and that the bond, if approved, would be void.

As the District Judge, in so refusing to approve the bond, appears to have acted under a misunderstanding of the powers of this court and of its justices, and of his own duty in the premises, and as in his return he expresses his readiness to enforce any decision of this court, it appears to us to be more just to him, as well as more consistent with the maintenance of the rightful authority of this court, to sustain this petition, and enable bail to be taken before him in accordance with the order heretofore made, than to dismiss these proceedings, and to deal with the matter over his head, as it were, by having the petitioner admitted to bail by this court, or by the justice thereof assigned to the eighth circuit.

We do not anticipate that there will be any occasion for the actual issue of a writ of peremptory mandamus; but, should it become necessary to do so in order to secure the rights of the petitioner, his counsel may move for the writ at any time. The present order will be

*Petitioner entitled to writ of mandamus to the District Judge to admit the petitioner to bail on his giving bond in proper form and with sufficient sureties.*

Mr. Justice Brewer, with whom concurred Mr. Justice Brown, dissenting.

I am unable to concur in all the views expressed in the opinion of the court. Agreeing that this court has power to admit to bail in criminal cases pending proceedings in error, I reach this conclusion in a different way, and deduce the right to let to bail solely from the grant of jurisdiction over the proceedings in error. As said in *Ex parte Dyson*, 25 Mississippi, 356, 359 : "The right of a prisoner to bail, after conviction, is not regulated by the Constitution or by statute, and is governed by the rules and practice of the common law. It seems to be fully and clearly established that the Court of King's Bench could bail in all cases whatsoever, according to the principles of the common law; the action of that court not being controlled by the various statutes enacted on the subject of bail, but regulated and governed entirely by a sound judicial discretion on the subject. 2 Hale P. C. 129; 4 Co. Inst. 71; 4 Com. Dig. 6, tit. (f. 3 ;) 1 Bacon's Ab. 483–493 ; 2 Hawk. P. C. 170; Cowp. 333. In the exercise of this discretion the court in some instances admitted to bail, even after verdict, in cases of felony, whenever a special motive existed to induce the court to grant it. 1 Bac. Abr. 489–490 ; 2 Hawk. P. C. 170."

So, when jurisdiction is given over proceedings in error in criminal cases, that jurisdiction carries with it, by implication, the power to make all orders necessary and proper not merely for bringing up the record, but also for the custody of the defendant pending the hearing of his allegations of error. But that jurisdiction is vested in this court as a court, and not in any single justice.

There have been five separate enactments of Congress in reference to the letting to bail and the review of judgments in criminal cases. First, for bail before trial. (Secs. 1014, 1015, and 1016, Rev. Stat.) These sections name the judicial officers by whom bail may be taken. Second, in respect to judgments in criminal cases in the state courts, brought here on error. (Sec. 1017, Rev. Stat.) In this section there is

specific provision in reference to the matter of bail. Third, the act of March 3, 1879, c. 176, providing for a review by the Circuit Court of judgments in the District Court in criminal cases. 20 Stat. 354. In this act express authority is given for bail, and the officers named by whom such bail may be taken. Fourth, the act of February 6, 1889, c. 113, 25 Stat. 655, granting a writ of error from this court to bring up the judgments of any inferior courts of the United States in capital cases. Nothing is said in this act in respect to the matter of bail, but the allowance of the writ is made to operate as a stay of proceedings. Fifth, the act of March 3, 1891, c. 517, 26 Stat. 826, — the act under which this controversy has arisen—which provides for a review by this court of the final judgments of Circuit or District Courts in cases of "convictions of capital or otherwise infamous crimes." In this statute also there is no mention of bail.

I fail to appreciate the argument that because Congress has made specific provision for bail in criminal cases before conviction, it is to be assumed that it intended that bail should likewise be allowed in all cases after conviction; or that, because in two statutes, contemplating review of judgments in criminal cases, it made like specific provision in respect to letting to bail, it intended the same grant of power in two other and later statutes granting a right of review — in which it said nothing in respect to bail. In other words, an omission apparently made *ex industria* implies the same intention as an express provision fully stated. On the contrary, as I understand it, the logic of all differences in substantial provisions between earlier and later statutes is indicative of difference rather than identity of purpose.

"Indeed, the words of a statute, when unambiguous, are the true guide to the legislative will. That they differ from the words of a prior statute on the same subject, is an intimation that they are to have a *different* and not the *same* construction." *Rich* v. *Keyser*, 54 Penn. St. 86, 89.

Where the later of two acts upon limited partnerships omitted the infliction, prescribed by the earlier, of a penalty for the omission of certain matters required by both, the court

said: "We must presume that the [earlier] act . . . and the decisions under it were well known to the law makers at the time the [later] act . . . was passed. The omission to prescribe the penalty . . . is good reason for concluding that no such liability was intended." *Eliot* v. *Himrod*, 108 Penn. St. 569, 573. See Endlich on the Interpretation of Statutes, § 384.

Neither can I gather from the legislation authorizing bail before trial, or that provision for bail in cases brought to this court from conviction in state tribunals, or that authorizing bail in cases taken from the District to the Circuit Court, the evidence of a settled policy on the part of Congress that bail should be allowed in all cases, capital or otherwise, brought here on error from a final judgment of the Circuit or District Court. Indeed, with reference to this matter of policy it was well said in *Hadden* v. *The Collector*, 5 Wall. 107, 111.: "What is termed the policy of the government with reference to any particular legislation is generally a very uncertain thing, upon which all sorts of opinion, each variant from the other, may be formed by different persons. It is a ground much too unstable upon which to rest the judgment of the court in the interpretation of statutes."

Nevertheless, I agree with the majority, that this court has power to prescribe by rule all matters of detail in respect to procedure which are not in terms fixed or denied by statute. It has exercised such power and passed a rule concerning the letting to bail in which, as I have hitherto supposed, it determined the whole matter.

It is idle to say that there is no difference between the supersedeas of a judgment and the letting to bail. When a sentence of death is stayed by this court, it does not follow, as a matter of course, that the party sentenced is to be discharged from custody and permitted to go where he pleases; and the same is true in case of a sentence to confinement and hard labor in the penitentiary. The stay of execution simply prevents the hanging or the removal of the party to the penitentiary. But it is unnecessary in view of the language of this court to make any argument to show that the two things are different. In

*In re Claasen*, 140 U. S. 200, 208, the court said: "We hold, therefore, that the allowance of the *supersedeas* in the present case was proper, and we deny the motion to set it aside. To remove all doubt on the subject, however, in future cases, we have adopted a general rule, which is promulgated as Rule 36 of this court, (see 139 U. S. 706,) and which embraces, also, the power to admit the defendant to bail after the citation served."

The rule there indicated was put into two paragraphs, one of which provides among other things for a supersedeas and the other for admitting to bail. This court then, certainly, understood that there was a difference between the two, and did not add a second paragraph to regulate a matter which was fully regulated by the first. It is also true that in the first paragraph provision is made for the taking of security, but taking security is not technically letting to bail, and the provision in reference to security evidently refers to those cases in which the sentence of the trial court directs the payment of a fine. In respect to such a sentence, "security" is an apt and suitable word.

Now, the idea of a rule is that it makes full provision for everything within the scope of its general purpose, and when this court, by the second paragraph, named certain judicial officers as the ones to admit to bail, it was a declaration, first, that this court had power to pass such a rule; and, second, upon the principle, *expressio unius exclusio alterius*, that it had named therein all the judicial officers who were to exercise that particular authority. There is in its language nothing to suggest that it was intended to be cumulative, or that in addition to certain officers given by law the right to admit to bail, other officers were by it given the like power. It is well to note the very words of the rule:

"1. An appeal or a writ of error from a Circuit Court or a District Court direct to this court, in the cases provided for in sections 5 and 6 of the act entitled 'An act to establish Circuit Courts of Appeals, and to define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes,' approved March 3, 1891, may

be allowed, in term time or in vacation, by any Justice of this court, or by any Circuit Judge within his circuit, or by any District Judge within his district, and the proper security be taken and the citation signed by him, and he may also grant a supersedeas and stay of execution or of proceedings, pending such writ of error or appeal.

"2. Where such writ of error is allowed in the case of a conviction of an infamous crime, or in any other criminal case in which it will lie under said sections 5 and 6, the Circuit Court or District Court, or any justice or judge thereof, shall have power, after the citation is served, to admit the accused to bail in such amount as may be fixed." ·

No one can read this rule, and particularly the second paragraph, without understanding that by it this court had named the officers, and the only officers, who should have the power to admit to bail. Certainly such has been the understanding of bench and bar through the country.

In *United States* v. *Simmons*, 47 Fed. Rep. 723, 724, Judge Benedict says: "The rules of the Supreme Court of the United States (Rule 36) permit persons convicted, when they appeal to the Supreme Court of the United States, to be admitted to bail, but leave the question of admitting to bail to the discretion of the court below."

Can there be any doubt as to the meaning of the second paragraph? It says: "The Circuit Court or District Court, or any justice or judge thereof." Surely, that does not mean any Circuit Court or any District Court, or any justice or any judge thereof, but the court in which the case was tried. If it was intended by the second paragraph to give to any justice of this court the power to admit to bail, why was not the language of the first paragraph repeated, or a mere reference made to the words of description therein? Why was the careful language used which unquestionably limits to the judicial officers of the circuit in which the case was tried? It says "any justice or judge thereof." Section 605, Revised Statutes, contains these words: "The words 'circuit justice' and 'justice of a circuit,' when used in this title, shall be understood to designate the justice of the Supreme Court who

is allotted to any circuit." Did not this court, when it framed this paragraph, understand what the statute had declared to be the meaning of the words "justice of a circuit?" If the power belonged to all the justices of the court, either independently of the rule or by virtue of the first paragraph, why in this second paragraph mention the justice of the circuit? I confess my inability to see any reason therefor.

Hence I am forced to the conclusion that if the order of Mr. Justice White, who was not the justice of the eighth circuit, is to be construed as a command in respect to bail, it was beyond the scope of the rule. I think, however — and in this I must also differ from the majority — that, reasonably construed, it may be taken as a supersedeas, the power to grant which is unquestioned, and a reference of the matter of bail to the trial judge.

Indeed, the conclusion reached by the court seems to work out this curious result, that one judge, by virtue of his power to allow a writ of error, can command another judge to perform the ministerial duty of approving a bail bond. Suppose a criminal case is tried by a justice of this court while holding the Circuit Court, can it be that the circuit judge, exercising the power given to him by the first paragraph of this rule, can allow a writ of error, and couple with it a command to the circuit justice to approve a bail bond against his judgment of the propriety of letting to bail, and such command be enforced by a writ of mandamus from this court? I submit the query without further comment.

I am authorized to say that MR. JUSTICE BROWN concurs in these views.

MR. JUSTICE WHITE took no part in the decision of this case.