Ellis SIMON; Trudy Hunt; Tony Younany; George Oko; Jacqueline Hounchell; Sylvia Wohl, Larry Abbott; Estate of George E. Patterson; Estate of Willie Grier; Estate of Joyce Fogliano; Estate of Virginia Overstreet; Estate of Evelyn Schrieber; and Estate of Stanley Kesselman, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

PHILIP MORRIS INCORPORATED; R.J. Reynolds Tobacco Company; Brown and Williamson Tobacco Corporation; B.A.T. Industries, P.L.C. The American Tobacco Company; Lorillard Tobacco Company, Inc.; and Liggett & Myers, Inc., Defendants.

No. 99 CV 1988.

United States District Court,
E.D. New York.

June 13, 2000.

Steven E. Fineman, Joan T. Brown, Lieff, Cabraser, Heimann & Bernstein, L.L.P., New York City, Richard M. Heimann, Elizabeth J. Cabraser, Robert J. Nelson, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, Perry Weitz, Robert J. Gordon, Jerry Kristal, Richard Akel, Weitz & Luxenberg, P.C., New York City, Thomas M. Sobol, Gregory T. Arnold, Brown, Rudnick, Freed & Gesmer, P.C., Boston, MA, Norwood Wilner, Spohrer, Wilner, Maciejewski & Matthews, P.A., Jacksonville, FL, Jon W. Barret, Barrett Law Offices, Lexington, MS, for plaintiffs and the Putative Class.

Robert A. Cohen, Peter L. Critchell, Dechert, Price & Rhoads, New York City, Judy Leone, Dechert Price & Rhoads, Philadelphia, PA, for defendant Philip Morris, Inc.

Harold Keith Gordon, Byron G. Stier, Jones, Day, Reavis & Pogue, New York City, Hugh R. Witing, Mark A. Belasic, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Jerome R. Doak, Margaret I. Lyle, Jones, Day, Reavis & Pogue, Dallas, TX, for defendant R.J. Reynolds Tobacco Co.

Marjorie Press Lindblom, Peter A. Bellacosa, Kirkland & Ellis, New York City, David M. Bernick, P.C., Kirkland & Ellis, Chicago, IL, Daryl Joseffer, Kirkland & Ellis, Washington, DC, for defendant Brown & Williamson Tobacco, Corp.

Joseph M. McLaughlin, Simpson, Thacher & Bartlett, New York City, Ronald M. Neumann, Michael P. Panagrossi, Simpson Thacher & Bartlett, New York City, for defendant B.A.T. Industries, PLC.

Alan Mansfield, Robert J. Kirshenberg, Stephen L. Saxl, Greenberg Traurig, LLP, New York City, Gary R. Long, John Sherk, III, Tammy B. Coker, Shook Hardy & Bacon LLP, Kansas City, MO, for defendant Lorillard Tobacco Co.

Aaron H. Marks, Nancy E. Struab, Kasowitz, Benson, Torres & Friedman, LLP, New York City, for Liggett & Myers, Inc.

*MEMORANDUM and ORDER*
*on Preliminary Issues of*
*Class Certification*

WEINSTEIN, Senior District Judge.

Plaintiffs have moved for class certification of a nationwide smoker class action. *See* Fed.R.Civ.P. 23(b)(3). The putative class is described as:

All persons residing in the United States, or who were residents of the United States at the time of their deaths, who have a 20 pack-year history of smoking Defendants' cigarettes and who, individually or through an estate or other legal representative, had a timely claim as of April 9, 1999 for personal injury damages or wrongful death arising from cancer of the lung. A pack-year is one package of cigarettes consumed per day per year.

They assert that there is a valid cause of action for hundreds of thousands of people injured (and estates of those who have died) because of violations of their substantive rights by the tobacco industry ("Tobacco"). In their view, the most effective way to obtain a remedy for those who have allegedly suffered lung cancer caused by smoking is through a national class action.

As a threshold matter, Tobacco denies the substantive and factual viability of these claims. It also contends that, even if theoretically supportable, the claims are nevertheless barred by various defenses, including statutes of limitations.

With respect to the specific question of class certification, Tobacco points to the fact that there are only some 750 cases pending nationally against it and that a class action with all its attendant complexities is not needed to avoid undue burdens on the judicial system. More forcefully, Tobacco argues that a class action is not authorized by the Federal Rules of Civil Procedure as interpreted by the courts, and that class resolution of the tobacco disputes would deny both prospective plaintiffs and defendants their due process rights to individual adjudications.

In addressing plaintiffs' motion to certify at this preliminary stage plaintiffs' contention that there is a valid cause of action must be assumed to be accurate. While the court need not now, and does not, make any finding that plaintiffs' contentions can be proven, their proffer (incorporated in this memorandum as Appendix A on file with the Clerk of the Court) is so weighty as to be entitled to respectful consideration on the certification issue.

As a practical matter, the issue of class certification cannot be resolved without further attention to the litigation's factual and procedural underpinnings. Plaintiffs have requested a preliminary evidentiary hearing to assist the court in deciding whether certification is proper. That request is granted.

Putting aside for the moment the question of whether the technical requirements of Rule 23 for class certification can be met, defendants contend that the substantive tort law and associated substantive-procedural rules of fifty states and the District of Columbia (as well as the various other U.S. jurisdictions) must be applied under the *Erie* doctrine and New York's conflict rules; these laws, the argument goes, are so diverse that a national class action cannot realistically be decided by a single jury. As appendices C through K (on file with the Clerk of the Court) suggest, there is considerable weight to this argument. A variety of statutory reforms and evolutions in the caselaw have in recent years created substantial deviations in the states from what had earlier been a rather uniform national common law of torts.

The contention about diverse substantive law warrants some reflective consideration. Workable alternatives may exist if plaintiffs' views prevail. First, it may be that the states can be divided for purposes of controlling substantive law into a relatively few categories. Second, it may be that New York's substantive law will be held to govern as representing the place where the gravamen of the alleged delicts occurred, providing a uniform law. *See, e.g., Bergeron v. Philip Morris, Inc.,* 100 F.Supp.2d 164, 170–71 (E.D.N.Y.2000); Friedrick K. Juenger, *A Third Conflicts Restatement?,* 75 Ind.L.J. 403, 412–415 (2000) ("interstate and international transactions are, by their very nature, sufficiently different from purely domestic ones to pose the legitimate question whether they ought not to be governed by some form of international or supranational law. . . . [T]he substantive law approach is designed to achieve fair results in multistate cases."). Third, the jury may be asked to make separate findings of fact that will permit its general findings to be applied to the law of the various jurisdictions affected. Fourth, a sin-

gle jury could be empaneled to decide common questions of law and fact, with non-class (individual specific) issues later litigated separately before different juries in courts in the states of plaintiffs' residences (so long as diversity jurisdiction remained intact). *See* Mary J. Davis, *Towards the Proper Role for Mass Tort Class Actions,* 77 Or.L.Rev. 157, 219–21 (1998) ("[R]equiring an analysis of relevant and interested jurisdictions does not mandate the application of the law of each state."); *cf.,* Fed.R.Civ.P. 42(b) (separate trials); *see also* 28 U.S.C. § 1404(a) (transfer to another district "for the convenience of parties and witnesses ... where it might have been brought"). The national tobacco settlement with the states resulted in a proportion of the total settlement for each state; that ratio may reflect the force of relative substantive laws of the states as a surrogate for their differences. Limiting the number of subclasses based upon typologies of state tort law may warrant analysis by experts on American tort or procedural law.

Apart from the problem of possible subclasses based upon differences in state laws, other possible subclasses may need attention. For example, even though only one disease—primary lung cancer—is involved, and future "victims" are not covered by the proposed class, subclasses of the living, representatives of the deceased and those claiming punitive damages may be required. Before the issue of certification is decided, the complaint may need to be recast to reflect such subclassing.

A number of the issues raised on the certification motion will require further briefing, evidentiary hearings, and, possibly, amendment of the complaint. The extent to which the case might be simplified by statistical analysis has not yet been adequately explored with the court.

None of the matters to be addressed at the certification hearing will decide the ultimate merits of the claims. *Compare Philip Morris, Inc. v. National Asbestos Workers Medical Fund,* 214 F.3d 132 (2nd Cir.2000) (no ruling on the merits as part of certification), *with* Karin S. Schwartz, et al., *Notes from the Cave: Some Problems of Judges in Dealing with Class Action Settlements,* 163 F.R.D. 369 (1995) (need for some regard for merits in deciding preliminary class action certification issues). To facilitate the newly established interlocutory appeals for class certification decisions as provided by Rule 23(f), some fleshing out of the factual background of the underlying dispute so that the appellate court can fully and fairly evaluate certification in proper context is desirable. In this and other ways trial courts have an obligation to assist the appellate courts in applying Rule 23(f). *See, e.g.,* Fed.R.Civ.P. 23(f) cmt. ("[T]he district court often can assist the parties and court of appeals by offering advice on the desirability of appeal." ... "The district court, having worked through the certification decision, often will be able to provide cogent advice on the factors that bear on the decision whether to permit appeal.").

Rule 23 remains viable in mass tort cases, but requires "caution when individual stakes are high and disparities among class members are great." *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Nothing in any of the cases cited by the parties suggests that the Supreme Court has sought to indirectly repeal Rule 23 or to hobble the district courts in using available techniques to provide for "the just, speedy and inexpensive determination of every action," Fed.R.Civ.P. 1.

In accordance with the Supreme Court's caution, decision on class certification is reserved so that the parties can arrange for further preliminary proceedings with respect to the matters raised in this memorandum, issues discussed orally during the June 12, 2000 hearing, and such other matters as may arise before a final decision on certification.

Plaintiffs must establish that they can modify their complaint so that it can be presented as a series of discrete questions to the jury, permitting a verdict applicable to the entire class without the need for hundreds-of-thousands of separate trials on such individual matters as the amount of compensatory damages, application of defenses, and allocation of punitive damages. Since the case is structured for trial, plaintiffs must establish that trial is in fact feasible.

The parties shall attempt to agree on the ambit and procedure for the certification hearing in accordance with the oral suggestions of the court. Counsel are urged to proceed expeditiously. *See* Fed.R.Civ.P. 23(c)(1) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.").

SO ORDERED.